15517

O'NEAL v. PILOT LIFE INSURANCE COMPANY

(24 S. E. (2d), 746)

December, 1941.

328

*Mr. Henry Miller,* of Anderson, Counsel for Appellant,

*Messrs. Watkins & Prince,* of Anderson, Counsel for Respondent,

March 23, 1943.

The unanimous opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER:

On the 19th day of March, 1931, the respondent insured the life of John Patrick O'Neal of Anderson, S. C., for $2,000.00 in consideration of the payment of certain quarterly premiums in the sum of $6.50 payable on the 19th day of June, September, December, and March in each year for five years and thereafter the sum of $13.00; the said insurance being made payable on the death of the insured to his wife, Beulah M. O'Neal, appellant here, and the beneficiary therein designated. The policy of insurance further providing a grace period of thirty-one days for the payment of every premium during which time the insurance shall continue in force.

This action was commenced October 1, 1939. The appellant alleged that the insured, John Patrick O'Neal, died on the 6th day of October, 1933, that formal proofs of insured's death were promptly furnished respondent and demand made for the payment of said sum of money due thereon but that respondent refused and failed to comply with appellant's demand, denying liability thereunder.

In due time the respondent filed its answer admitting the issuance of the policy in question but alleging that the policy had, prior to the death of the insured, lapsed for nonpayment of premiums and that said policy was, therefore, of no effect and invalid. It denied all the remaining allegations of the complaint.

The cause came on for trial before the Honorable G. Duncan Bellinger, Circuit Judge, presiding at the December (1941) term of Court of Common Pleas for Anderson County, and a jury. At the conclusion of appellant's testimony the respondent moved for a nonsuit on the ground that the last premium becoming due on the policy sued upon during the life of the insured was not paid when due (June 19, 1933) or within the days of grace thereafter, thirty-one days, as permitted by the contract of insurance. The Court granted the motion of respondent, and the appeal to this Court is from the order of nonsuit.

The policy contract contained the following provision:

"2. Payment of Premiums: All premiums are payable at the Home Office of the company, but may be paid on or before the date due to the Company agent in exchange for the Company's official receipt, signed by one of the officers referred to below and countersigned by the agent. If any premium be not paid when due, this Policy shall be void and all premiums forfeited to the Company, except as herein provided. The premiums on this Policy are computed on the basis that they will be paid annually, in advance, but for the convenience of the insured they may be paid semi-annually or quarterly.

"3. Modification: Only the President, a Vice-President, the Secretary, Actuary, Treasurer, an Assistant Secretary or other executive officer, is empowered by the Company to make or modify this or any other contract of insurance, or to extend time for paying any premium, or to waive any forfeiture, or to bind the Company in any manner whatsoever. These powers cannot be delegated, and must be ex-

ercised only in writing, which shall be the only evidence of such exercise."

The appellant does not claim that the premium falling due on June 19, 1933, was paid in cash, but relies upon the alleged fact that one, W. L. Woodson, an agent of respondent, employed as a collector on a debit, was indebted to the insured for coal and wood in an amount in excess of the said unpaid premium, and had promised to pay this premium, when ·due; and that a custom had been established between the insured and one, W. L. Gilreath, another agent of respondent, who appellant in her testimony, designated as the "General Agent" of respondent at Anderson, whereby amounts due by him to the insured were offset against premiums due by the insured on this policy, and the premiums thus paid.

It appears from the testimony in this case and the terms of the contract of insurance that it is immaterial whether W. L. Gilreath was in fact a "General Agent" of respondent.

When the December, 1931, quarterly premium became due, Mr. Woodson collected from the insured $3.50 in cash, and instructed the insured to send to Mr. Gilreath one thousand pounds of coal of the value of $3.00, making a total of $6.50; and delivered to the insured the official receipt of the respondent for that quarterly premium. The June, 1932, quarterly premium was paid by crediting the account of Mr. Woodson with $6.50, and Mr. Woodson delivering the official receipt of the respondent for this premium. It is also inferable from the testimony that the September, 1932, premium was likewise paid in this manner, and the official receipt of the respondent delivered to the insured. But the money for these premiums was transmitted to the respondent by Mr. Woodson. All other premiums were paid in cash by the insured.

When the March, 1933, premium became due, Mr. Woodson informed the insured that he would have to pay this premium in cash; that although he (Woodson) was in-

debted to the insured, having had illness in his family, he was not in a position to send the amount of the premium to respondent, promising however to pay the June, 1933, premium when it became due. Thereupon, the March. 1933, premium was paid in cash and the official receipt of the respondent was given therefor.

The June, 1933, premium was not paid to respondent by either the insured or Mr. Woodson, and the policy was lapsed in accordance with the terms thereof.

Following the lapse of the policy for the nonpayment of the June, 1933, premium, respondent, from its Home Office, wrote the insured two letters, with stamped and addressed reply envelopes enclosed, informing him that his policy had been lapsed, and inquired if he wanted to reinstate the policy. To neither of these letters did the insured, or any one in his behalf, reply. He did not then set up the claim, which the appellant herein now does, that although the insured had no receipt for the premium, by his private agreement with the local agent of the respondent, he considered the premium paid.

It will be seen from the above that the only transaction involving the purchase of coal from the insured by W. L. Gilreath, "General Agent," and the price thereof being accepted as a part payment of a premium was simultaneous with the delivery of the coal and of the delivery of the official receipt of respondent for the premium; and that the other transactions testified to were wholly with W. L. Woodson, except a cash transaction with Gilreath on October 5, 1932. Woodson is described in appellant's printed argument as "an ordinary agent of debit collecting rank."

There is no testimony from which a reasonable inference could be drawn that the respondent had any notice whatsoever that the quarterly premiums on this policy were ever paid in any form other than in cash. On the contrary, it is manifest that any arrangement with reference to crediting the account of Mr. Woodson with the amount of a premium

and Mr. Woodson paying to the respondent the premium was entirely a private understanding between the insured and Mr. Woodson as an individual. And the insured was fully aware of this since when the respondent wrote him in reference to the nonpayment of the June, 1933, premium, the insured did not make any claim that he considered the premium paid, but went to Woodson in an endeavor to have Woodson pay it in accordance with his promise.

The contract of insurance provides that premiums may be made to an agent of respondent "in exchange for the company's official receipt, signed by one of the officers referred to below and countersigned by the agent." The officers referred to are the ones mentioned in the clause in the policy under the heading "Modification" set out hereinabove; and of course Mr. Woodson is only "an ordinary agent of debit collecting rank."

In this case as in the case of *Wood v. Southeastern Life Insurance Co.*, 107 S. C., 536, 93 S. E., 197, 198, "The decision rests in the law of agency; that law is that generally an agent's authority permits him to receive payment in money only. 2 Parsons on Contracts, 615; Story on Agency, §§ 181, 413. The rule is not invariable, of course; but there are no circumstances in the instant case tending to modify the rule."

All exceptions are overruled, and the judgment appealed from affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.